ANDREW A. SMALLEY v. ANNA E. WRIGHT ET AL., HEIRS-AT-LAW OF JAMES M. QUIMBY, DECEASED.

1. Where an endorser of a promissory note dies before the note matures, notice of dishonor to his personal representatives is sufficient to support a claim on the endorsement against his heirs and devisees, without notice to them.

2. Notice served by the notary upon a person in charge of the administrator's usual place of business, is legal service, and its validity is not impaired by the notice being addressed to the decedent.

3. When the notary knows of the endorser's death, and knows who and where his personal representatives are, a service of notice by mail, addressed to "executors," "administrators," or "personal representatives," is not sufficient. They should be addressed by name, and not by their office merely.

---

On case certified from the Essex Circuit Court. The facts of the case are fully stated in the opinion.

Argued at June Term, 1878, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the plaintiff, *Ryerson* and *Ward*.

For the defendants, *F. W. Stevens* and *W. H. Hagaman*.

The opinion of the court was delivered by

KNAPP, J. This suit is against the heirs of James M. Quimby, deceased. The claim is on contracts of endorsement by the ancestor upon two promissory notes for $750 each. The endorser's death occurred before maturity of the notes, and notice of dishonor was served, or attempted to be served, on the administrators, and not upon the defendants, as heirs. A verdict was rendered for plaintiff for the amount of both notes. On a rule to show cause why that verdict should not be set aside, these questions were reserved and certified for the advisory opinion of this court—first, whether the defendants, as heirs-at-law of the deceased endorser, were entitled to the usual notice of protest in order to charge them with liability on account of the contract of endorsement; and next, whether, as shown by the case, due notice of the dishonor of the notes was given to the administrators, or either of them.

To the first question, I think, the answer must be in the negative, that they are not so entitled. The endorser's contract is that he will pay on condition that the holder exercises due diligence in giving him notice of dishonor. If the endorser die before maturity of the note, so that strict performance of the condition by the holder becomes impossible, he may still be in legal compliance with the condition, if he give notice to decedent's personal representatives, because they stand in his place, and are liable to pay his debts out of his estate in their hands to be administered. The personal representatives, if there be any, are entitled to notice.

Professor Parsons, in formulating a general rule as to whom notice shall be given, says: "We think the true rule, although it may not reconcile all the authorities, and, indeed, must be open to some exceptions, should be this: every person who, by and immediately upon the dishonor of the note or bill,

and only upon such dishonor becomes liable to an action, either on the paper or on the consideration for which the paper was given, is entitled to immediate notice." 1 *Parsons on Notes and Bills* 499.

Now, upon the heirs-at-law there rests no obligation to pay by force of the contract merely. Primarily they have no liability in respect to it. If called upon as heirs-at-law to satisfy such a claim, it is only because they come to have, by devise or descent, lands from their ancestors, which the law compels them, upon demand, to surrender, so far as may be needed, to pay his valid debts.

Notice of dishonor to the heirs-at-law would not substitute notice to the personal representatives, if there be such. If there be none, notice sent to decedent's last place of residence is sufficient to give the contract binding force. 1 *Parsons on Notes and Bills* 526.

This seems to be the result of the cases, and we are referred to no case holding notice to the heirs requisite, under any circumstances, to meet the condition put upon the holder. The full purpose of notice is served when the personal representative is notified. Whatever protection or indemnity he may gain by resort to prior parties will, if heirs are called upon, inure to them.

A rule requiring the holder to notify the heirs and devisees, would often be attended with great inconvenience and embarrassment to holders of commercial paper.

If notice was given by the holder of the notes, sufficient to fix a liability upon the administrators to pay them as the debt of the intestate, then his heirs-at-law were bound to pay them to the extent of the assets received from him, if the administrator failed to pay, because by such notice the debt became the valid debt of the ancestor.

The next question, then, presented is, whether due notice of the dishonor of the notes was given to the administrator, or either of them. The manner of serving notice in each case differed. As to the note which matured October 4th, 1874, a notice of protest, bearing the *address* of *James M.*

*Quimby,* was left by the notary for Mr. Wright, one of the administrators of James M. Quimby, deceased, at the office of the late firm of Quimby & Co., which the notary supposed to be Mr. Wright's usual place of business, with a person in charge of the office. Whether notice was left by the notary at the office of Quimby & Co. at all, and whether that was the usual place of business of Mr. Wright, were questions controverted.

At the trial, and upon evidence not conclusive either way, the jury having found both facts, it must be taken as established in the case, for the purposes of this inquiry, that notice was so left, and that the place where it was left was the administrator's usual place of business. That the notice was proper in form, and served within the requisite time after dishonor being conceded, it must be held, from the manner of service stated, that Mr. Wright, as administrator of the deceased endorser, was legally notified, unless the address on the notice invalidated the service.

That it did not do so, I think is clearly apparent. If the notice had been sent by mail so directed, it would clearly have been a misdirection. But as the notice was delivered by the notary in person, the address upon it was of no moment whatever. If the notary had handed the notice to Mr. Wright, with the statement that it was for him, and bearing as it did the address of the decedent, no one would contend against the validity of the service upon him. But the fact is found to be that the notice was delivered to a person in charge of his place of business, and who, therefore, was constructively Mr. Wright's agent, with the statement that it was for Mr. Wright, as executor, &c.; this, in legal effect, was a service on the principal. It must be assumed that the agent did his duty to his principal, and delivered it to him, and not to any other; if he acted otherwise, the fault was not that of the holder of the note, or of his agent, the notary. Notice in case of the first note was sufficient.

.As to the second note, which fell due on the 7th of October, 1874, a notice in proper time was placed in the Newark

post-office, with postage prepaid, and addressed to the "Executors of James M. Quimby, deceased, Newark, N. J."

If the death of the endorser before maturity of the note is known to the holder or notary who, for that purpose, is his agent, notice must be sent to his executors or administrators, if it can be ascertained by reasonable inquiry who and where they are. *Parsons on Notes and Bills* 501. In this case the notary knew of the endorser's death, the name of at least one of his administrators, and where his place of business was, for he had served upon him three days before then a like notice. His duty was, in the exercise of proper diligence, to act upon this knowledge, and address the notice to the person whom he knew to be a personal representative of the deceased endorser. The notice as mailed was faultily addressed, and there is nothing in the circumstances to excuse the misdirection. It cannot be presumed that a notice so addressed would, by the ordinary course of the mails, reach the administrators in due time, and without such delay as would, with the knowledge possessed by the notary, release the endorser.

To support a recovery, then, proof that notice was actually received in *legal time* was necessary. Such proof the plaintiff attempted to make, but in this I think he failed. There was testimony that the notice was seen in the hands of one of the administrators several months after the time of mailing it. This was too late to be of any value in making such proof.

Gen. Ward, the city postmaster, says, that according to the course of business in the post-office, a letter like the one in question, being of unusual character, would have been presented by the superintendent to him for special instructions; and as Mr. Quimby, in his lifetime, was well known to him, his former place of business, and some of the persons then occupying it, equally well known, he would have directed inquiry to be made of those persons as to who were the executors or personal representatives, and would have directed the letter to be sent according to the information so received. He had no recollection of any such train of circumstances occur-

ring with respect to this notice; and what he testified seemed rather his judgment, when on the stand, of what he would do under such circumstances, than the outcome of any rule of business in his office, or usual business habit.

But, taking the testimony at its best, it is clear that there must be unusual delay in forwarding the notice, resulting from a pursuit of the methods detailed. When would the superintendent bring it to the postmaster's notice? This does not appear, nor is it shown when the inquiry would be made, nor how soon after obtaining information the notice would be sent to its ascertained destination. This seems to me to be such an interruption of the regular course of transmission by mail, as to exclude any rational presumption that the notice was received in proper time, and no recovery on this note can be supported upon the evidence as it stands.

The circuit may be so advised.